# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                                :

UNITED STATES OF AMERICA         :

                           :     **SUPERSEDING**

       - v. -             :     **INDICTMENT**

                            :

ANDREW BARTOK,                :     S3 10 Cr. 510 (CS)
     a/k/a "Drew Bartok,"      :
KATHLEEN ADDARIO,           :
     a/k/a "Kathleen Kelly,"   :
     a/k/a "Kate Adams,"       :
     a/k/a "Kathy Adams,"      :
VERONICA TOBIN,             :
     a/k/a "Veronica Ann Tobin,"  :
     a/k/a "Veronica A. Tobin,"   :
     a/k/a "Veronica Jackson,"    :
                            :

                    Defendants.   :
                            :

- - - - - - - - - - - - - - - - - - - x

## COUNT ONE

### (Conspiracy)

The Grand Jury charges:

#### Relevant Entity and Individuals

1.    At all times relevant to this Indictment, Revelations Consulting LLC ("Revelations") was a limited liability company that maintained at least one place of business in New Jersey.  At times relevant to this Indictment, Revelations did business under the name "Foreclosure Club of America."

2.    At all times relevant to this Indictment, ANDREW BARTOK, a/k/a "Drew Bartok," the defendant, was the President and General Manager of Revelations.

3.    From in or about 2000 through in or about August 2009, KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate

Adams," a/k/a "Kathy Adams," the defendant, worked as a client manager at Revelations.

4.      From in or about early 2007 through in or about February 2011, VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendant, worked at Revelations.

<u>Background</u>

5.      A bankruptcy filed under Chapter 13 of the United States Bankruptcy Code enables debtors with income to develop a plan to repay all or part of their debts.  Under Chapter 13, debtors propose a plan to make installment payments to creditors until their debts are repaid.  During the time covered by the Chapter 13 repayment plan, federal law forbids creditors from starting or continuing collection efforts.  By filing under Chapter 13, debtors can stop foreclosure proceedings and may cure delinquent mortgage payments over time.  Debtors must, however, make all mortgage payments that come due during the time period covered by the repayment plan.

6.      In order to file a Chapter 13 bankruptcy, a debtor typically completes a voluntary petition form which lists, among other things, the debtor's basic personal identification information.  In addition, the debtor is required to complete supporting schedules which list the debtor's assets, liabilities, income, and expenditures.

2

7.    Since in or about October 2004, in order to file a Chapter 13 bankruptcy petition, a debtor must also complete Exhibit D to the bankruptcy petition.  Exhibit D requires the debtor to certify, under penalty of perjury, that s/he has complied with a credit counseling requirement.  The credit counseling requirement requires debtors to receive a briefing from a credit counseling agency approved by the United States Trustee or bankruptcy administrator outlining opportunities for available credit counseling and assisting the debtor in performing a related budget analysis.

8.    After a Chapter 13 bankruptcy petition is filed, a debtor typically receives an official notice from the United States Bankruptcy Court setting forth the date, time and place of a "Section 341" meeting of the debtor and his or her creditors to be convened by the United States Trustee. The debtor must attend the meeting and submit to an examination under oath. At the meeting, the debtor is questioned about his debts, income, and assets.  In addition, the debtor is required to produce documents concerning the debtor's financial condition, including but not limited to, the debtor's federal tax return.

9.    Eventually, if the debtor does not attend court proceedings concerning the Chapter 13 bankruptcy petition, the debtor's petition is dismissed.  Should the debtor seek to file bankruptcy on a subsequent occasion during the following six

3

years, the debtor will be required to list the prior dismissed
bankruptcy case on the subsequent petition.

### Overview of the Scheme

10.   ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN
ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy
Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a
"Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants,
defrauded individuals facing foreclosure by falsely informing
them that they did not have to make their mortgage payments and
then filing Chapter 13 bankruptcy petitions on their behalf.
Typically, after an individual paid a large upfront fee and
agreed to pay a monthly retainer, Revelations would file a
Chapter 13 bankruptcy petition containing false information about
the individual's assets and liabilities. BARTOK, ADDARIO and
TOBIN would then seek to prolong an individual's bankruptcy case
as long as possible. To accomplish this, BARTOK, ADDARIO and
TOBIN used a variety of mean and methods, including (1)
instructing debtors not to attend Section 341 meetings and other
United States bankruptcy court proceedings; (2) mailing letters
fraudulently claiming to be from debtors and containing false
excuses as to why the debtors could not attend previously
scheduled meetings before the Chapter Thirteen Standing Trustee;
and (3) submitting substantive motions seeking relief from the
United States Bankruptcy Court that falsely purported to be

4

signed by the debtors.

The Scheme to Defraud and Obstruct

11.   During the time period relevant to this Indictment, flyers were mailed in Revelations' name to individuals who were in danger of foreclosure stating that Revelations could assist the individuals in delaying the foreclosure of their homes.  The flyers typically advised individuals that they would be able to stay in their homes without making any payments. The flyers, each of which contained similar language, purported to be sent by both ANDREW BARTOK, a/k/a "Drew Bartok," the defendant, and KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," the defendant, using her alias "Kathleen Kelly." In order to gain the trust of the homeowners, the flyers claimed that the senders had previously been served with a foreclosure summons. There is no record of ADDARIO ever receiving a foreclosure summons.

12.   Individuals who called Revelations in response to the solicitation were typically told to travel to Revelations' offices in New Jersey.  There, the individual would meet with one or more of ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," and VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants. Generally, the individuals would be told that Revelations could delay or

5

prevent their foreclosure proceedings in exchange for an initial upfront fee and subsequent monthly fees.  In addition, the individuals typically would be told that they would not have to pay their mortgages for approximately two years and that after two years, they could repurchase their homes and that Revelations would assist them in doing so.

13.  Thereafter, with or without informing the clients, employees of Revelations, at the direction of one or more of ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," and VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, often prepared and filed Chapter 13 bankruptcy petitions in the clients' names. The Chapter 13 petitions were not filed for the purpose of having the clients engage in Chapter 13 reorganization of their debts, but for the improper purpose of using the United States bankruptcy laws to forestall the foreclosure of the clients' homes as long as possible while Revelations continued to collect its monthly fees.

14.  The clients' Chapter 13 petitions, signed under penalty of perjury, each purported to have been filed pro se by a debtor, without assistance from any bankruptcy petition preparer or attorney and each contained a Chapter 13 voluntary petition form which listed, among other things, basic personal

6

identification information for the debtor.

15. When a bankruptcy petition contained schedules for the debtor to detail the assets, liabilities, income, and expenditures for the debtor and lists of the debtor's secured and unsecured creditors, the information typed on the schedules by Revelations' employees included false information about the debtor's finances. For instance, the schedules listed only a single creditor — the mortgage holder for a single piece of real property – and fraudulently omitted Revelations as an unsecured creditor even though the clients had agreed to pay monthly fees to Revelations as ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," and VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, well knew.

16. On the schedules describing the debtors' personal property, which included approximately thirty-five possible categories of personal property, the petitions routinely listed personal property in the same few categories, and fraudulently failed to list personal property in the other categories, which included common items such as automobiles, alimony or support agreements, and sports equipment.

17. In a number of instances, employees of Revelations, including VERONICA TOBIN, a/k/a "Veronica Ann

7

Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendant, called credit counseling agencies and pretended to be debtors for the purposes of the credit counseling briefings. These employees then falsely signed statements of compliance with the credit counseling requirement. Revelations often charged its client amounts that were multiple times the cost of the credit counseling briefings.

18. ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," and VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, routinely instructed clients to: (1) forward any court documents to Revelations; (2) not attend court proceedings, including Section 341 meetings of the creditors, and (3) in some instances, not mention Revelations if contacted by court personnel.

19. In order to delay the eventual dismissal of a client's bankruptcy petition as long as possible and in order to continue collecting monthly payments from clients, Revelations submitted substantive motions seeking relief that falsely claimed to have been signed by the pro se debtor.

20. In other instances, employees of Revelations prepared, signed and mailed fraudulent letters, purporting to be from debtors to the Chapter Thirteen Standing Trustee setting forth false excuses as to why the debtors could not attend the

Section 341 creditors' meetings and asking for postponements of the meetings.

21. In some instances, when a bankruptcy petition was dismissed, employees of Revelations filed a second subsequent bankruptcy petition, again for the sole purpose of improperly using the United States bankruptcy laws for the purpose of delaying a foreclosure of a client's home. Even though the Chapter 13 voluntary petition requires a debtor to disclose prior bankruptcies filed within the last six years, employees of Revelations failed to disclose the first dismissed bankruptcy.

### Statutory Allegations

22. From in or about 2005 up to and including in or about February 2011, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other, to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 152(3), 152(5), 152(9), 157, 1505, 1519 and 1621(2).

23. It was a part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a

"Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams,"
VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A.
Tobin," a/k/a "Veronica Jackson," the defendants, and others
known and unknown, would and did knowingly and fraudulently make
a false declaration, certificate, verification, and statement
under penalty of perjury as permitted under Section 1746 of Title
28, in and in relation to any case under Title 11, in violation
of Title 18, United States Code, Section 152(3);

     24.   It was a further part and an object of the
conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN
ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy
Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a
"Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants,
and others known and unknown, would and did knowingly and
fraudulently receive a material amount of property from a debtor
after the filing of a case under Title 11, with intent to defeat
the provisions of Title 11, in violation of Title 18, United
States Code, Section 152(5);

     25.   It was a further part and an object of the
conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN
ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy
Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a
"Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants,
and others known and unknown, after the filing of a case under

Title 11, would and did knowingly and fraudulently withhold from

a custodian, trustee, marshal, and other officer of the court and

a United States Trustee entitled to its possession, recorded

information (including books, documents, records, and papers)

relating to the property and financial affairs of a debtor, in

violation of Title 18, United States Code, Section 152(9);

      26.   It was a further part and an object of the

conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN

ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy

Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a

"Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants,

and others known and unknown, having devised and intending to

devise a scheme and artifice to defraud and for the purpose of

executing and concealing such a scheme and artifice and

attempting to do so, would and did file a petition under Title

11, file a document in a proceeding under Title 11, and make a

false and fraudulent representation, claim, and promise

concerning and in relation to a proceeding under Title 11 at any

time before or after the filing of the petition, and in relation

to a proceeding falsely asserted to be pending under such title,

in violation of Title 18, United States Code, Sections 157(1),

(2), and (3);

      27.   It was a further part and an object of the

conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN

11

ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy

Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a

"Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants,

and others known and unknown, would and did corruptly influence,

obstruct, and impede and endeavor to influence, obstruct, and

impede the due and proper administration of the law under which a

pending proceeding is being had before a department and agency of

the United States, in violation of Title 18, United States Code,

Section 1505;

　　　　28.　It was a further part and an object of the

conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN

ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy

Adams," the defendants, and others known and unknown, would and

did knowingly alter destroy, mutilate, conceal, cover up,

falsify, and make a false entry in a record, document, and

tangible object with the intent to impede, obstruct, and

influence the investigation and proper administration of a matter

within the jurisdiction of a department and agency of the United

States and a case filed under Title 11, and in relation to and

contemplation of any such matter and case, in violation of Title

18, United States Code, Section 1519; and

　　　　29.　It was a further part and an object of the

conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN

ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy

Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did in a declaration, certificate, verification, and statement under penalty of perjury as permitted under Section 1746 of Title 28, United States Code, willfully subscribe as true a material matter which she or he did not believe to be true, in violation of Title 18, United States Code, Section 1621(2).

<u>OVERT ACTS</u>

30.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about May 2005, an employee of Revelations mailed a one-page flyer that was signed in the name "Kathleen Kelly" to an individual residing in Newburgh, New York ("Debtor 1").

b.   In or about May 2005, Debtor 1 called Revelations and had a conversation with KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," the defendant.

c.   In or about May 2005, ANDREW BARTOK, a/k/a "Drew Bartok," and ADDARIO, the defendants, met with Debtor 1 at Revelations' office in North Bergen, New Jersey.

13

d.    In or about May 2005, during a meeting with Debtor 1 at Revelations' office in North Bergen, New Jersey, BARTOK informed Debtor 1 that Debtor 1 would have to make an initial payment of $1,500 and monthly payments thereafter.

e.    In or about May 2005, BARTOK endorsed a check in the amount of $200 from Debtor 1 that was later deposited in a Revelations Consulting LLC account at a Valley National Bank branch.

f.    On or about May 20, 2005, an employee of Revelations filled out and caused to be filed a bankruptcy petition in the name of Debtor 1, in the United States Bankruptcy Court for the Southern District of New York in Poughkeepsie, New York.

g.    On or about October 14, 2005, an employee of Revelations filled out and caused to be filed a bankruptcy petition in the name of Debtor 1, in the United States Bankruptcy Court for the Southern District of New York in Poughkeepsie, New York.

h.    In or about 2005, BARTOK and ADDARIO instructed Debtor 1 not to attend any proceedings related to Debtor 1's bankruptcy case.

i.    In or about 2006, during a telephone conversation, BARTOK instructed Debtor 1 to file a quitclaim deed for Debtor 1's house with the Orange County Clerk's Office to

14

reflect that Debtor 1's mother owned 5% of the house even though Debtor 1's mother in fact had no ownership interest in Debtor 1's house.

   j. On or about January 12, 2006, an employee of Revelations prepared and caused to be filed an "OBJECTION AND CERTIFICATION TO CREITOR'S [sic] DISMISSAL MOTION" in Debtor 1's bankruptcy case.

   k. On or about June 15, 2006, BARTOK sent a written objection opposing the United States Trustee's proposed order "authorizing examination of Revelations and production of documents," via overnight mail, to the United States Bankruptcy Court in Poughkeepsie, New York.

   l. On or about July 5, 2006, BARTOK mailed a motion to the United States Bankruptcy Court in Poughkeepsie, New York seeking: (i) reconsideration of United States Bankruptcy Judge Cecelia Morris's June 19, 2006 Order authorizing the examination of "Kathleen Kelly" and directing the production of documents by Revelations; and (ii) the removal of Judge Morris from Debtor 1's bankruptcy case.

   m. In or about September 2007, an employee of Revelations mailed a solicitation to an individual residing in Yonkers, New York ("Debtor 2").

   n. In or about September 2007, BARTOK and ADDARIO met with Debtor 2 at Revelations' office in New Jersey.

o.    In or about September 2007, during a meeting with Debtor 2 at Revelations' office in North Bergen, New Jersey, BARTOK informed Debtor 2 that Debtor 2 would have to make an initial payment of $1,500 and monthly payments thereafter.

p.    On or about September 17, 2007, an employee of Revelations filled out, under penalty of perjury, and caused to be filed, a bankruptcy petition in the name of Debtor 2, in the United States Bankruptcy Court for the Southern District of New York in White Plains, New York.

q.    On or about December 3, 2007, BARTOK negotiated a check in the amount of $500 from Debtor 2 at a Valley National Bank branch.

r.    In or about April 2009, ADDARIO met at Revelations' offices in New Jersey with an individual residing in White Plains, New York ("Debtor 3").

s.    On or about April 6, 2009, ADDARIO received $2,000 in cash from Debtor 3 at Revelations' offices in New Jersey and provided Debtor 3 with a receipt.

t.    On or about April 8, 2009, an employee of Revelations filled out and caused to be filed a bankruptcy petition and schedules in the name of Debtor 3 in the United States Bankruptcy Court for the Southern District of New York in White Plains, New York.

u.    In or about 2009, ADDARIO told Debtor 3 not

16

to attend any court proceedings concerning the bankruptcy petition.

           v.   On or about May 5, 2009, an employee of Revelations wrote a letter to the Chapter Thirteen Standing Trustee, in the name of Debtor 3, claiming that Debtor 3 would be unable to attend a May 8, 2009 meeting in connection with the bankruptcy petition filed in Debtor 3's name.

           w.   On or about May 6, 2009, an employee of Revelations mailed the May 5, 2009 letter purporting to be from Debtor 3 to the Chapter Thirteen Standing Trustee in White Plains, New York.

           x.   On or about June 9, 2009, an employee of Revelations mailed a letter purporting to be from Debtor 3 to the Chapter Thirteen Standing Trustee in White Plains, New York.

           y.   In or about June 2009, BARTOK and ADDARIO met at Revelations' offices in New Jersey with an individual residing in Poughkeepsie, New York ("Debtor 4").

           z.   On or about June 8, 2009, an employee of Revelations filled out a bankruptcy petition and schedules in the name of Debtor 4, which were later filed in the United States Bankruptcy Court for the Southern District of New York in Poughkeepsie, New York.

           aa.  On or about June 8, 2009, ADDARIO received approximately $1,000 in cash from Debtor 4 at Revelations'

offices in New Jersey.

        bb.  On or about June 9, 2009, an employee of Revelations received approximately $1,860 in cash from Debtor 4 at Revelations' offices in New Jersey.

        cc.  On or about July 7, 2009, an employee of Revelations mailed a letter purporting to be from Debtor 4 to the Chapter Thirteen Standing Trustee in White Plains, New York.

        dd.  On or about July 28, 2009, an employee of Revelations mailed a letter purporting to be from Debtor 4 to the Chapter Thirteen Standing Trustee in White Plains, New York.

        ee.  On or about October 8, 2009, VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendant, received $100 in cash from Debtor 4 at Revelations' offices in New Jersey.

        ff.  In or about February 2010, an employee of Revelations mailed a multi-page flyer that was signed in the name "Andrew Bartok," to an individual residing in Monroe, New York ("Debtor 5").

        gg.  On or about March 11, 2010, BARTOK met with Debtor 5 at Revelations' office in Clifton, New Jersey.

        hh.  On or about March 11, 2010, TOBIN met with Debtor 5 at Revelations' office in Clifton, New Jersey.

        ii.  On or about March 11, 2010, TOBIN received approximately $300 in cash from Debtor 5 at Revelations' offices

18

in New Jersey.

jj.  On or about March 15, 2010, an employee of Revelations called Cricket Debt Counseling, located in Clackanas, Oregon, and while pretending to be Debtor 5 took a credit counseling session on behalf of Debtor 5.

kk.  On or about March 15, 2010, an employee of Revelations, under the direction of TOBIN, filled out a bankruptcy petition in the name of Debtor 5, which was later filed by Debtor 5 in the United States Bankruptcy Court for the Southern District of New York in Poughkeepsie, New York.

ll.  On or about March 15, 2010, TOBIN instructed Debtor 5 not to attend any proceedings related to Debtor 5's bankruptcy case.

mm.  From in or about April 15, 2010 through in or about May 13, 2010, Debtor 5 paid $600 to Revelations.

nn.  In or about late 2007, an employee of Revelations mailed a flyer that was signed in the name "Andrew Bartok" to an individual residing in Sussex, New Jersey ("Debtor 6").

oo.  In or about December 2007, BARTOK met with Debtor 6 at Revelations' offices in New Jersey.

pp.  In or about December 2007, TOBIN received approximately $1,500 in cash from Debtor 6 at Revelations' offices in New Jersey.

19

qq.  In or about December 2007, TOBIN met with Debtor 6 at Revelations' offices in New Jersey.

rr.  On or about January 7, 2008, an employee of Revelations filled out a bankruptcy petition in the name of Debtor 6, which was later filed in the United States Bankruptcy Court for the District of New Jersey.

ss.  From in or about February 2008 through in or about April 2008, Debtor 6 paid approximately $500 per month to Revelations.

tt.  In or about January 2008, TOBIN told Debtor 6 that he did not have to attend meetings of his creditors held by the United States Bankruptcy Court because Revelations would attend the meetings for him.

uu.  In or about January 2008, TOBIN told Debtor 6 that he did not have to make any payments to the United States Bankruptcy Court unless instructed by her to do so, but that he did have to make payments to Revelations.

vv.  In or about December 2008, TOBIN met with an individual residing in East Orange, New Jersey ("Debtor 7") at Revelations' offices in New Jersey.

ww.  On or about December 15, 2008, TOBIN received approximately $300 in cash from Debtor 7 at Revelations' offices in New Jersey.

xx.  On or about March 9, 2009, an employee of

20

Revelations signed Exhibit D to Debtor 7's bankruptcy petition, under penalty of perjury, using an incorrect version of Debtor 7's name, which was later filed in the United States Bankruptcy Court for the District of New Jersey in Newark, New Jersey.

yy.  On or about February 16, 2009, an employee of Revelations filled out a bankruptcy petition, under penalty of perjury, in the name of Debtor 7, which was later filed in the United States Bankruptcy Court for the District of New Jersey in Newark, New Jersey.

zz.  In or about March 2009, TOBIN told Debtor 7 that he did not have to attend a meeting of his creditors held by the United States Bankruptcy Court and to send TOBIN the notice of the creditors' meeting.

aaa. On or about September 21, 2009, TOBIN called Cricket Debt Counseling, located in Clackanas, Oregon, and pretended to be Debtor 7's wife in order to obtain a credit counseling certificate for Debtor 7.

bbb. On or about September 21, 2009, an employee of Revelations filled out a bankruptcy petition in the name of Debtor 7, which was later filed in the United States Bankruptcy Court for the District of New Jersey in Newark, New Jersey.

ccc. In or about early November 2009, an employee of Revelations mailed a letter, in the name of Debtor 7, claiming that Debtor 7 would be unable to attend a November 3, 2009

21

meeting in connection with the bankruptcy petition filed in Debtor 7's name.

ddd. In or about early 2011, mailings from the Foreclosure Club of America, including a mailing sent in BARTOK'S name, were sent to an individual residing in New Jersey ("Potential Client 1").

eee. On or about February 3, 2011, Potential Client 1 met with BARTOK and TOBIN at Foreclosure Club of America's office in Clifton, New Jersey. During a meeting, BARTOK, among other things, (i) prepared a document titled "Map" for Potential Client 1; (ii) told Potential Client 1 that BARTOK would complete bankruptcy documents for Potential Client 1; and (iii) told Potential Client 1 to avoid attending any hearings pertaining to the bankruptcy.

(Title 18, United States Code, Section 371.)


COUNT TWO

(False Statements by Andrew Bartok)

The Grand Jury further charges:

31. On or about July 5, 2006, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," the defendant, unlawfully, wilfully and knowingly, in a matter within the jurisdiction of the judicial branch of the Government of the United States, falsified, concealed, and covered up by

22

trick, scheme, and device a material fact, made materially false, fictitious, and fraudulent statements and representations, and made and used false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, BARTOK, submitted a "MOTION FOR RECONSIDERATION & TO REMOVE JUDGE CECELIA MORRIS" to United States Bankruptcy Judge Cecelia Morris containing the following false statements and concealed and covered up facts that were material to that motion:

### Specification One

BARTOK falsely stated that "Kathleen Kelly" did not have personal knowledge concerning Debtor 1's bankruptcy case.

### Specification Two

BARTOK concealed and covered up that "Kathleen Kelly" was actually an alias for an individual who worked at Revelations whose true name was Kathleen Addario.

(Title 18, United States Code, Sections 1001(a)(1), (2) and (3).)

### COUNT THREE

(Conspiracy to Commit Mail and Wire Fraud)

The Grand Jury further charges:

32.    The allegations contained in paragraphs 1 through 21 and 30 are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

33.   From in or about May 2005 up to and including in or about February 2011, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other, to commit offenses against the United States, to wit, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

34.   It was a part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposit and cause to be deposited matters and things

to be sent and delivered by private and commercial interstate carriers, and take and receive therefrom, such matters and things, and knowingly cause to be delivered by mail and such carriers according to the direction thereon, and at the place at which they were directed to be delivered by the person to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

35.   It was a further part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR

(Conspiracy to Commit Obstruction of Justice
in Chapter 13 Bankruptcy Cases)

The Grand Jury further charges:

36.  The allegations contained in paragraphs 1 through 21 and 30 are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

37.  From in or about May 2005 up to and including in or about February 2011, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other, to commit an offense against the United States, to wit, obstruction of justice, in violation of Title 18, United States Code, Section 1512.

38.  It was a part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did corruptly persuade another person, and attempt to do so, and engage in misleading conduct

26

toward another person, with intent to influence, delay, and prevent the testimony of a person in an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(1).

39. It was a further part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did corruptly persuade another person, and attempt to do so, and engage in misleading conduct toward another person, with intent to cause and induce a person to withhold testimony, and withhold a record, document, and other object from an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(2)(A).

40. It was a further part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did corruptly persuade another person, and attempt to do so, and engage in misleading conduct toward another person, with intent to cause and induce a person to evade legal process summoning that person to appear as a witness, and to produce a record, document, and other object,

27

in an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(2)(C).

      41.   It was a further part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did corruptly persuade another person, and attempt to do so, and engage in misleading conduct toward another person, with intent to cause and induce a person to be absent from an official proceeding to which such person had been summoned by legal process, in violation of Title 18, United States Code, Section 1512(b)(2)(D).

      42.   It was a further part and an object of the conspiracy that ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, and others known and unknown, would and did corruptly obstruct, influence, and impede an official proceeding, and attempt to do so, in violation of Title 18, United States Code, Section 1512(c)(2).

      (Title 18, United States Code, Section 1512(k).)

28

## COUNT FIVE

(Obstruction of Justice Concerning
the "Kathleen Kelly" Examination and Production of Documents)

The Grand Jury further charges:

43. From in or about June 2006 through in or about July 2006, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," and KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," the defendants, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States and a case filed under Title 11, and in relation to and contemplation of such matter and case, to wit, BARTOK and ADDARIO did not produce documents at a July 21, 2006 examination at the Office of the United States Trustee that had been ordered to be produced by the Honorable Cecelia G. Morris in a June 19, 2006 order.

(Title 18, United States Code, Sections 1519 & 2.)

29

COUNT SIX

(Perjury Concerning the March 15, 2011 Financial Affidavit)

The Grand Jury further charges:

44.  On or about March 15, 2011, in the Southern District of New York and elsewhere, ANDREW BARTOK, a/k/a "Drew Bartok," the defendant, in a declaration, certificate, verification, and statement under penalty of perjury as permitted under Section 1746 of Title 28, United States Code, in a proceeding before and ancillary to a court of the United States, knowingly made a false material declaration, to wit, BARTOK completed a Financial Affidavit in Support of Request for Attorney, Expert or Other Court Services Without Payment of Fee in connection with United States v. Andrew Bartok et al., 10 Cr. 510 (CS), which he caused to be submitted to the United States District Court for the Southern District of New York and which included the following false material declarations:

Declaration One

BARTOK falsely stated that he did not have "any cash on hand or money in savings or checking accounts."

30

Declaration Two

BARTOK falsely stated that the only property that he owned, including "any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)" was a $26,000 IRA Retirement Account.

(Title 18, United States Code, Section 1623.)


FORFEITURE ALLEGATIONS AS TO COUNTS ONE, THREE, AND FOUR

45. As the result of conspiring to commit bankruptcy offenses in violation of Title 18, United States Code, Section 152, as alleged in Count One of this Indictment; conspiring to violate Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud), as alleged in Count Three of this Indictment; and conspiring to violate Title 18, United States Code, Section 1512, as alleged in Count Four of this Indictment, ANDREW BARTOK, a/k/a "Drew Bartok," KATHLEEN ADDARIO, a/k/a "Kathleen Kelly," a/k/a "Kate Adams," a/k/a "Kathy Adams," VERONICA TOBIN, a/k/a "Veronica Ann Tobin," a/k/a "Veronica A. Tobin," a/k/a "Veronica Jackson," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of these

31

offenses, including but not limited to a sum of United States currency representing the amount of proceeds obtained as a result of the offenses, for which the defendants are jointly and severally liable.

<u>Substitute Asset Provision</u>

46.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853(p); and
Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney

32